# EXHIBIT 1

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

WHEREAS, Robert Entous ("Plaintiff" or "Releasor") alleged that he was employed by Lindbergh@Summerlin, LLC and Marco and Caroline Revah ("Releasees");

WHEREAS, Plaintiff filed an action (the "Action") captioned *Robert Entous v. Lindbergh@Summerlin, LLC, et al.*, Civil Action No. 1:16-cv-022216-TCB, in the United States District Court for the Northern District of Georgia (the "Court"), asserting claims against Lindbergh@Summerlin, LLC and Marco and Caroline Revah (collectively, "Defendants"), for alleged violations of the Fair Labor Standards Act ("FLSA") and Georgia's minimum wage law (O.C.G.A. § 34-4-3), and for breach of contract;

WHEREAS, Defendants maintain that Plaintiff is liable in whole or in part for the loss of certain merchandise from Defendants' Atlanta, Georgia retail business; and

WHEREAS, the parties desire to settle any and all disputes between them, without admitting liability or fault, including but not limited to all claims asserted in the Action;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth below, the parties agree as follows:

I. **PARTIES**: This document sets forth the terms and conditions of the Confidential Settlement Agreement and General Release (hereinafter "Agreement") by and between Plaintiff and Defendants. The term "Releasor" used herein shall mean Robert Entous and the term "Releasees" used herein shall include Lindbergh@Summerlin, LLC, Lindbergh Buckhead LLC, and all of those businesses' owners, shareholders, employees, agents, insurers, and attorneys, together with their predecessors, successors and assigns, both jointly and severally, including but not limited to Marco and Caroline Revah.

II. **ACKNOWLEDGMENT**: Releasor acknowledges that the amounts paid by Releasees under this Agreement fully compensate Releasor for all wages, overtime, liquidated damages and attorneys' fees he has claimed, and that Releasor is unaware of any basis upon which he could pursue additional claims or seek to recover additional damages against Releasees. Releasor further acknowledges that the purpose of this Agreement is to resolve all potential disputes between Releasor and Releasees. To the extent that any alleged claim is not or cannot be released under current law, the payments provided by Releasees pursuant to this Agreement shall be an offset against any such unreleased claim.

III. **PAYMENT AND CONSIDERATION**:

   A. In consideration of the release and other obligations entered into by Plaintiff pursuant to this Agreement, and obtaining from the Court an Order dismissing the Action with prejudice, Releasees agree that they will issue the following payments totaling $11,102.26:

   1. A check for $5,368 for litigation expenses, costs, and attorneys' fees, payable to DeLong, Caldwell, Bridgers, Fitzpatrick, & Benjamin, LLC, to be reported on a Form 1099; and

    2. A check in the gross amount of $2,867.13 less normal and appropriate withholdings, for alleged back pay, payable to Robert Entous, to be reported on a Form W-2.

    3. A check in the gross amount of $2,867.13 for alleged liquidated damages and in consideration for the general release, payable to Robert Entous, to be reported on a Form 1099.

B. Plaintiff understands and agrees that he and his counsel are responsible (and not Releasees) for any tax liability respecting the payments set forth in Section III.A of this Agreement, including but not limited to liability for the amount, method or calculation of withholding tax to federal, state or local governments, and Plaintiff's portion of social security tax. Further, Plaintiff agrees to indemnify Releasees for all costs, including attorneys' fees, they incur as a consequence of Plaintiff's failure to satisfy any tax obligations arising out of this Agreement.

C. Releasees' obligation to make the payment set forth in Section III.A is conditioned upon the receipt by Releasees' counsel, Law Offices of Gregory R. Fidlon, P.C., of an Order entered by the Court dismissing the Action with prejudice and without additional payment of costs or attorneys' fees. The payments set forth in Section III.A shall be sent to Plaintiff's attorneys, DeLong, Caldwell, Bridgers, Fitzpatrick & Benjamin, LLC (Attention: Matthew W. Herrington, Esq.), at 3100 Centennial Tower, 101 Marietta Street, Atlanta, Georgia 30303, within ten (10) days of Releasees' counsel's receipt of the Order entered by the Court.

## IV. GENERAL RELEASE:

A. As a material inducement to Releasees to enter into this Agreement, Releasor hereby irrevocably and unconditionally releases, acquits, and forever discharges the Releasees, and all persons acting by, through, under or in concert with them, from any and all charges, complaints, claims, liabilities, obligations, promises, damages, causes of action, rights, demands, costs, lawsuits, debts and expenses, including but not limited to attorney fees and costs, actually incurred of any nature whatsoever, known or unknown, which Releasor now has, or claims to have, or which Releasor at any time heretofore had or claimed to have, arising on or before the Effective Date of this Agreement (collectively the "Released Claims"). Releasor further agrees to waive irrevocably any right to recover under any claim that may be filed with or by the Equal Employment Opportunity Commission or any other federal, state or local agency with respect to his employment with Releasees.

B. Releasor understands that he is forever releasing and forgiving all known or unknown claims or causes of action which he could have brought against Releasees in the Action or any other litigation, whether under federal, state, or local law. Releasor understands that the claims he is releasing might arise under many different laws (including statutes, regulations, other administrative guidance, and common law doctrines), such as the following:

    1. Anti-discrimination statutes, such as Title VII, which prohibits discrimination and harassment based on race, color, national origin, religion, sex, and pregnancy, and prohibits retaliation; the Equal Pay Act, which prohibits paying men and women

unequal pay for equal work; the Americans with Disabilities Act and Sections 503 and 504 of the Rehabilitation Act of 1973, which prohibit discrimination based on disability; Section 1981 of the Civil Rights Act of 1866, which prohibits discrimination on the basis of race, color or national origin and retaliation; the Age Discrimination in Employment Act of 1967, and Executive Order 11,141, which prohibit discrimination on the basis of age and retaliation, and any other federal, state, or local laws prohibiting employment discrimination.

2. <u>Federal employment statutes</u>, such as the Employee Retirement Income Security Act of 1974, which, among other things, protects employee benefits; the Fair Labor Standards Act of 1938, which regulates wage and hour matters; the Family and Medical Leave Act of 1993, which requires employers to provide leaves of absence under certain circumstances and prohibits retaliation; the WARN Act, which requires that advance notice be given of certain work force reductions; and any other federal laws relating to employment, such as veterans' reemployment rights laws.

3. <u>Other laws</u>, such as any federal, state, or local laws restricting an employer's right to terminate employees, or otherwise regulating the terms or conditions of employment; any federal, state, or local law enforcing express or implied employment contracts or requiring an employer to deal with employees fairly or in good faith; any other federal, state, or local laws providing recourse for alleged wrongful discharge, breach of contract, improper garnishment, assignment, or deduction from wages, health and/or safety violations, improper drug and/or alcohol testing, any tort, physical or personal injury, infliction of emotional distress, fraud, negligence, loss of consortium, negligent misrepresentation, negligent supervision, defamation, abusive litigation, and similar or related claims.

4. <u>Examples of released claims</u> include, but are not limited to the following: (i) Releasor's claims or any related claims asserted in the Action; (ii) claims that in any way relate to or arise from any express or implied agreement or promise made to Releasor by any Releasee; (iii) claims that in any way relate to Releasor's employment with Releasees or any predecessor entity, or the termination of that employment, such as claims for compensation, benefits, insurance premiums, bonuses, commissions, lost wages, travel expenses, or unused accrued vacation or sick pay; (iv) claims that in any way relate to allegations of alleged harassment, discrimination, and/or retaliation; (v) claims that in any way relate to any state law tort causes of action; and (vi) claims that relate to attorneys' fees, costs, expenses or other indemnities with respect to claims that Releasor is releasing.

C. Releasees hereby also irrevocably and unconditionally release, acquit, and forever discharge Releasor from any and all charges, complaints, claims, liabilities, obligations, promises, damages, causes of action, rights, demands, costs, lawsuits, debts and expenses, including but not limited to attorney fees and costs, actually incurred of any nature whatsoever, known or unknown, which Releasees now have, or claim to have, or which Releasees at any time heretofore had or claimed to have, arising on or before the Effective Date of this Agreement.

D. If it is determined that any claim covered by this general release cannot be released as a matter of law, the parties expressly agree that this general release will remain valid and fully enforceable as to the remaining Released Claims.

V. **KNOWING AND VOLUNTARY WAIVER AND RELEASE:**

   A. Releasor acknowledges that he has had reasonable and sufficient time to consider whether or not he desires to enter into this Agreement. It is understood and agreed that this Agreement is executed by Releasor knowingly and voluntarily. The parties also acknowledge that no promise or inducement has been offered or made except as set forth in this Agreement.

   B. As part of this consideration for the conditions of the settlement as set forth above, the signatories expressly warrant and represent that: (1) they are legally competent to execute this Agreement; and (2) there are no outstanding subrogation claims or liens of any type or character, by reason of the matters covered by the general release contained herein.

   C. Releasor has the right and opportunity to consult fully with legal counsel or other advisor prior to signing this Agreement and he has, in fact, consulted with his legal counsel, Matthew W. Herrington, Esq. of DeLong, Caldwell, Bridgers, Fitzpatrick & Benjamin, LLC, prior to signing this Agreement. Releasor also acknowledges that before signing this Agreement, he has read and fully understood each paragraph herein.

VI. **COVENANT NOT TO SUE:** Releasor represents that, other than the Action, he has not filed and will not file or pursue any lawsuits, complaints or charges against any of the Releasees, including by opting-in to or in any way voluntarily participating in any case that may be filed based on acts occurring up to the Effective Date of this Agreement, with any federal, state or local court or agency that concern or relate to his alleged employment with Releasees or the termination thereof. If Releasor violates this Section VI, he agrees to repay to Releasees any payments made pursuant to Section III.A of this Agreement, and Releasor shall pay all of Releasees' costs and expenses (including reasonable attorneys' fees) related to the defense of any claims filed or pursued by Releasor.

Releasees also represent that they have not filed and will not file or pursue any lawsuits, complaints or charges against Releasor based on acts occurring up to the Effective Date of this Agreement, with any federal, state or local court or agency that concern or relate to acts undertaken in connection with his alleged employment with Releasees.

VII. **NON-ADMISSION:** Releasor acknowledges that the payments set forth herein do not constitute any admission of liability on the part of the Releasees, by whom liability is expressly denied. This Agreement shall not be deemed an admission of liability or a violation of any law, rule, regulation or order, of any kind.

VIII. **NO RE-HIRE:** Releasor represents and agrees that he expressly waives any right to reinstatement, and agrees that he will not apply for, or otherwise seek employment with Releasees, its parents, owners, affiliates or subsidiaries at any time. If Releasor does apply for any position with Releasees, its parents, owners, affiliates or subsidiaries, Releasor understands and agrees that his application will be summarily rejected and that he will not be entitled to bring any claim based on such rejection.

IX. **NON-DISPARAGEMENT:** Releasor agrees not to make any oral or written statement or take any other action that disparages or criticizes the Releasees or their good reputation. Marco and Caroline Revah agree not to make any oral or written statement or take any other

action that disparages or criticizes the Releasor, provided, however, that this restriction will not apply to internal Company conversations regarding the Releasor. Nothing herein shall prevent Releasor or Releasees from providing truthful testimony if compelled to do so by subpoena or by a governmental agency.

X. **OLDER WORKERS BENEFIT PROTECTION ACT:** This Agreement is intended to satisfy the requirements of the Older Workers Benefit Protection Act, 29 U.S.C. sec. 626(f). Employee is advised to consult with an attorney before executing this Agreement. Releasor acknowledges and agrees that: (a) Releasor has read and understands the terms of this Agreement and understands that Releasor is releasing all claims against the Releasees, including claims under the Age Discrimination in Employment Act; (b) Releasor has been advised in writing (by this Agreement) to consult with an attorney before executing this Agreement; (c) Releasor has obtained and considered such legal counsel as Releasor deems necessary; (d) Releasees' agreement to provide the monetary payment described in Paragraph III.A of this Agreement is consideration to which Releasor would not otherwise be entitled without signing the Agreement; (e) Releasor has been given twenty-one (21) days from the date of his initial receipt of this Agreement, to consider whether or not to enter into this Agreement (the "Consideration Period"), although Releasor may elect not to use the full 21-day period at Releasor's option; and (f) by signing this Agreement, Releasor acknowledges that Releasor does so freely, knowingly, and voluntarily.

Releasor may revoke Releasor's acceptance of this Agreement within seven (7) days after the date Releasor signs it (the "Revocation Period"). Releasor's revocation must be in writing and received by Rachel Smith, in person or by email at rachel@fidlonlegal.com, on or prior to the end of seventh day in order to be effective. If Releasor does not revoke acceptance within the Revocation Period, Releasor's acceptance of this Agreement shall become binding and enforceable on the eighth day after signing the Agreement (the "Effective Date").

This Agreement does not waive or release any rights or claims that Releasor may have under the ADEA that arise after the execution of this Agreement. In addition, this Agreement does not prohibit Releasor from challenging the validity of this Agreement's waiver and release of claims under the ADEA.

XI. **MISCELLANEOUS:**

A. ***Governing Law & Jurisdiction.*** This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. The parties agree that any disputes related to this Agreement shall be subject to the jurisdiction of the United States District Court for the Northern District of Georgia, unless the Parties agree otherwise in writing. The Parties shall request in their Motion to Approve Settlement that the Court retain jurisdiction to enforce the terms of this Settlement Agreement.

B. ***No Assignment.*** Releasor represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, suit, debt, obligation, account, contract, agreement,

covenant, guarantee, controversy, judgment, damage, claim, counterclaim, liability or demand of any nature whatsoever relating to any matter covered by this Agreement.

C. **Successors.** This Agreement shall be binding upon, enforceable by and inure to the benefit of Releasor's personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees and the Releasees and any successor of the Releasees, but neither this Agreement nor any rights or payments arising hereunder may be assigned, pledged, transferred or hypothecated by Releasor.

D. **Headings.** Headings used in this Agreement are for reference purposes only and shall not be deemed to be a part of this Agreement.

E. **Entire Agreement.** This Agreement constitutes the entire agreement between the Releasor and the Releasees pertaining to those subjects contained in it and supersedes all prior and contemporaneous agreements, representations and understandings. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect or particular manner whatsoever except by a writing duly executed by all parties.

F. **Severability.** Each provision of this Agreement is intended to be severable. In the event a portion of this Agreement is held to be legally invalid by a competent court of law, the invalid portion shall be stricken and all other obligations shall remain valid and mutually binding on the parties and not be affected thereby.

I HAVE CAREFULLY READ AND UNDERSTAND THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE, WHICH INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.

_____   8/3/16
Robert Entous                     Date

Lindbergh@Summerlin, LLC and Lindbergh Buckhead LLC

By: _____   8-4-16
                                  Date

_____   8/4/16
Marco Revah                       Date

_____   8/4/16
Caroline Revah                    Date

6